IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SCOTT A. SHARP,                                    06-CV-1843-BR

            Plaintiff,                             OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

            Defendant.


MERRILL SCHNEIDER
14415 S.E. Stark
P.O. Box 16310
Portland, OR 97292
(503) 255-9092

            Attorney for Plaintiff

KAREN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204-2902
(503) 727-1053


1 - OPINION AND ORDER

**MICHAEL MCGAUGHRAN**
Office of the General Counsel
**STEPHANIE R. MARTZ**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-3748

        Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Scott A. Sharp seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) payments under Title II of the Social Security Act.  Plaintiff seeks an order reversing the decision of the Commissioner and remanding this action for an award of benefits.

      This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.


<u>**ADMINISTRATIVE HISTORY**</u>

      Plaintiff filed his application for DIB on February 9, 2004, alleging a disability onset date of November 26, 2003.  Tr. 59-

2 - OPINION AND ORDER

60.[1]  The application was denied initially and on reconsid-
eration.  Tr. 24, 30.  An Administrative Law Judge (ALJ) held a
hearing on March 2, 2006, and a continuation hearing on May 9,
2006.  At both hearings, Plaintiff was represented by an
attorney.  At the March 2, 2006, hearing, Plaintiff and a
vocational expert (VE) testified.  Tr. 269-91.  At the May 9,
2006, hearing, a different VE testified.  Tr. 292-303.

The ALJ issued a decision on May 26, 2006, in which he found
Plaintiff was not disabled.  Tr. 16-21.  The ALJ's decision
became the final decision of the Commissioner on October 27,
2006, when the Appeals Council denied Plaintiff's request for
review.  Tr. 5-7.

## BACKGROUND

Plaintiff was born on April 14, 1970.  He was 35 years old
at the time of the first hearing and 36 years old at the time of
the continuation hearing.  Tr. 273.  Plaintiff completed ninth
grade and obtained a GED.  Tr. 273.  Plaintiff has past relevant
work experience as an office worker and customer-service
representative.  Tr. 20-21.

Plaintiff alleges disability due to asthma, an allergy to
cat dander, obesity, and dyslexia.  Tr. 18.

---

[1] Citations to the official transcript of record filed by
the Commissioner on September 12, 2007, are referred to as "Tr."

3 - OPINION AND ORDER

After the continuation hearing, the ALJ found Plaintiff has the severe impairments of asthma and allergies. Tr. 18. The ALJ concluded the remainder of Plaintiff's alleged conditions were not severe. Tr. 18.

The ALJ denied benefits to Plaintiff on the ground that he retains the residual functional capacity (RFC) to perform his past relevant work as a customer-service representative and as an office worker. Tr. 21.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 17-18.


## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential

inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's RFC. The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the

claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180

7 - OPINION AND ORDER

F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy
this burden through the testimony of a VE or by reference to the
Medical-Vocational Guidelines set forth in the regulations at
20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner
meets this burden, the claimant is not disabled.  20 C.F.R.
§ 404.1520(g)(1).


## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in
substantial gainful activity since November 26, 2003.  Tr. 20.

At Step Two, the ALJ found Plaintiff has severe impairments
of asthma and allergies.  Tr. 20.

At Step Three, the ALJ concluded Plaintiff's impairments do
not meet or equal the criteria for any Listed Impairment from 20
C.F.R. part 404, subpart P, appendix 1.  The ALJ assessed
Plaintiff's RFC and found Plaintiff did not have any exertional
limitations, but determined Plaintiff should not be exposed to
even moderate amounts of dust, fumes, odors, gases, cats, or cat
dander.  Tr. 19.  The ALJ also found Plaintiff should avoid
extreme heat and cold, wetness, humidity, cigarette smoke,
perfumes, and soldering fires.  Tr. 19.

At Step Four, the ALJ found Plaintiff was able to perform
his past relevant work.  Tr. 20.  Accordingly, the ALJ found
Plaintiff was not disabled, and, therefore, is not entitled to

8 - OPINION AND ORDER

benefits.  Tr. 21.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly found Plaintiff's obesity not to be severe; (2) improperly rejected the opinions of Eric Wall, M.D., and Anthony Montanaro, M.D., treating physicians; and (3) improperly considered the testimony of both VEs.

**I.   The ALJ did not err at Step Two when he found Plaintiff's obesity was nonsevere.**

As noted, the ALJ found at Step Two that Plaintiff has severe impairments of asthma and allergies.  Plaintiff, however, contends the ALJ erred when he found Plaintiff's obesity was nonsevere.

At Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments that would limit the claimant's ability to perform work-related activities for a period of at least 12 continuous months.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(ii).  The ALJ, however, must "ha[ve] substantial evidence to find that . . . medical evidence clearly establishe[s a claimant does] not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

9 - OPINION AND ORDER

Here the ALJ noted there is not any objective evidence in the record that establishes Plaintiff's obesity causes any limitations or affects Plaintiff's asthma or allergies. The ALJ further noted the record does not reflect any of Plaintiff's treating physicians opined Plaintiff had any work limitations or issues related to his obesity. In addition, Dr. Wall, one of Plaintiff's treating physicians, noted in May 2002 that even though Plaintiff's obesity was "long-standing," Plaintiff had been successful at work until he began experiencing asthma and allergy attacks. Tr. 145.

The Court concludes on this record that the ALJ did not err when he found at Step Two that Plaintiff's obesity was nonsevere because he gave clear and convincing reasons based on substantial evidence in the record for doing so.

## II.  **The ALJ erred when he rejected the opinions of Plaintiff's treating physicians.**

Plaintiff contends the ALJ erred when he improperly rejected the opinions of Drs. Wall and Montanaro, Plaintiff's treating physicians.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

10 – OPINION AND ORDER

1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

## A.  Dr. Wall's Opinion

The ALJ accorded "very little weight" to Dr. Wall's February 2006 opinion that Plaintiff had asthma attacks every "1-2 months" and was incapacitated for "3-4 days per attack" because the ALJ found Plaintiff's "attacks are due to either him not taking his medications, running out of medications, or due to him choosing to be around many cats."  Tr. 17.  The ALJ noted Dr. Wall's treatment notes from May 2004, September 2004, and

11 - OPINION AND ORDER

March 2005 reflect Plaintiff's asthma was stable.  The ALJ, therefore, found the record did not reflect Plaintiff had been to the hospital for an asthma attack since his November 26, 2003, onset date.

The record, however, reflects Plaintiff was seen in the emergency room on November 30, 2003; May 23, 2004; March 5, 2005; and April 9, 2005, for asthma attacks.  In addition, on October 19, 2005, Dr. Wall described Plaintiff as an individual with "profound allergies to cats and perfumes."  Tr. 201-02. Dr. Wall noted Plaintiff's allergies "usually result in him getting . . . referred to the emergency room."  Tr. 201-02. Dr. Wall also noted Plaintiff was undergoing treatment "with allergy shots" and opined Plaintiff would not be "categorized as being disabled" in the following 3-6 months if the treatment was successful.  Tr. 202.  Plaintiff, however, lost his insurance and was not able to continue with allergy shots for a time.

In his February 2006 report, Dr. Wall opined it took only "minor quantities" of cat dander to trigger Plaintiff's allergy and asthma attacks.  Dr. Wall also noted Plaintiff was once again undergoing allergy-injection treatment to reduce his attacks and opined it would take six months to one year for Plaintiff to reach a level of resistance that would allow him to "work comfortably in a typical work environment."  Tr. 184.

Dr. Wall's opinion regarding the severity and frequency

12 - OPINION AND ORDER

of Plaintiff's attacks is not contradicted by another treating or examining physician.  In fact, Dr. Wall's opinion is supported by his treatment notes and the opinion of Dr. Montanaro.

The Court, therefore, concludes the ALJ did not provide clear and convincing reasons supported by the record for rejecting the opinion of Dr. Wall regarding the frequency and severity of Plaintiff's asthma and allergy attacks.

Based on this record, the Court credits Dr. Wall's opinion.

**B.    Dr. Montanaro's Opinion**

The ALJ rejected the portion of Dr. Montanaro's February 23, 2006, opinion in which Dr. Montanaro opined Plaintiff was capable of only low-stress jobs, could walk for one or two blocks, and was limited to a modified range of sedentary or light-exertion work.  The ALJ found the record did not reflect evidence of any ongoing impairment that would affect Plaintiff's lower extremities to the point that Plaintiff would only be able to walk one or two blocks.

Although the record reflects Plaintiff had an ingrown toenail at one point and that he might suffer from plantar faciitis, there is not any evidence in the record that either condition limited Plaintiff's ability to work.  Accordingly, the Court concludes the ALJ provided clear and convincing reasons supported by the record for rejecting that portion of

13 - OPINION AND ORDER

Dr. Montanaro's opinion in which he reported Plaintiff's ability to work was limited and opined Plaintiff could work only sedentary or light jobs.

The ALJ also rejected that portion of Dr. Montanaro's February 23, 2006, opinion in which he opined Plaintiff had "severe persistent" allergy and asthma attacks that left Plaintiff incapacitated for "days to 1-2 weeks" and that Plaintiff would miss three days of work per month. Tr. 218. The ALJ, however, found the record reflects Plaintiff's asthma is stable and Plaintiff "has rarely been treated as a result of his asthma" since his alleged onset date of November 26, 2003. Tr. 18. The ALJ also found there is not any evidence that Plaintiff has to avoid all exposure to fumes, odors, gases, dusts, or chemicals because "such limitations would indicate the claimant had to live in a completely clean environment, which he does not." Tr. 18.

On December 4, 2004, Dr. Montanaro wrote to the Department of Human Resources at Plaintiff's job and noted Plaintiff has "significant chronic asthma with severe sensitivity to cats. He cannot work in environments with cat dander including pet owners with dander on their clothing." Tr. 228. Similarly, on February 27, 2006, Dr. Montanaro opined Plaintiff "has an extreme allergy to cats, cat hair and cat dander . . . [and] he can't work because he can't be in any work environment

14 - OPINION AND ORDER

due to his extreme allergy." Tr. 252.  On May 8, 2006, Dr. Montanaro noted Plaintiff "has severe cat sensitivity which triggers his asthma.  He should avoid direct <u>or</u> indirect exposure to cats including individuals who own cats who may have cat allergen on their clothing." Tr. 253 (emphasis in original).  As noted, the record reflects Plaintiff went to the emergency room a number of times after his November 26, 2003, alleged onset date because of issues with allergies and asthma related to problems with cats and cat dander.  Although Dr. Montanaro noted in November 2005 that Plaintiff was showing "definite improvement" and was "able to tolerate allergen exposure" after receiving allergy shots for a time, Plaintiff lost his insurance and had to discontinue his allergy-shot treatments.  Eventually Plaintiff began allergy-shot treatments again, and Dr. Montanaro opined in February 2006 that it would be between six months and one year before Plaintiff would be able to work again.  Tr. 184.

Dr. Montanaro's opinion regarding the severity and frequency of Plaintiff's attacks is supported by his treatment notes and the opinion of Dr. Wall and is not contradicted by another treating or examining physician.

The Court, therefore, concludes the ALJ did not provide clear and convincing reasons supported by the record for rejecting the opinion of Dr. Montanaro regarding the frequency and severity of Plaintiff's asthma and allergy attacks.

Based on this record, the Court credits Dr. Montanaro's opinion regarding the frequency and severity of Plaintiff's asthma and allergy attacks.

**III. Plaintiff is disabled.**

At the first hearing, the ALJ posed a hypothetical to the VE that included an individual who should not be exposed to any concentrated or moderate amounts of cat dander, dust, fumes, odors, or gases. The VE opined there were not any jobs that exist in the local or national economy that such an individual could perform because the individual would be exposed to these items "virtually anywhere unless the gentleman's working in a clean room." Tr. 290.

At the second hearing, the ALJ posed a hypothetical to a different VE that included an individual who should not be exposed to concentrated or even moderately concentrated levels of cat dander, dust, fumes, odors or gases. The VE opined such an individual could perform Plaintiff's past relevant customer-service work. Tr. 298. The ALJ posed another hypothetical that included an individual who, in addition to the above restrictions, also could not be exposed to *any* cat dander, directly or indirectly. The VE opined such an individual would be "difficult to accommodate" and such a condition would be "hard to control" in the work environment. Tr. 301. The ALJ posed a third hypothetical that included the limitations of the first

hypothetical and added two unscheduled absences from work per month.  The VE opined such an individual would be precluded from "sustained competitive employment."

As noted, Dr. Montanaro opined Plaintiff would miss three days of work per month on average.  In addition, Drs. Wells and Montanaro opined Plaintiff should not be exposed to cat dander directly or indirectly.

In light of the medical evidence, the testimony of both VEs, and the record as a whole, the Court finds Plaintiff does not have a sufficient RFC to sustain work-related activities on a regular and continuing basis as required by SSR 96-8p. Accordingly, the Court concludes Plaintiff is disabled.

**IV.  This matter should be remanded for payment of benefits.**

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court and generally turns on the likely utility of further proceedings.  *Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000).

The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate

17 - OPINION AND ORDER

award of benefits directed." *Harman*, 211 F.3d at 1178.  The

court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a

single question:  Whether the ALJ would have to award benefits if

the case were remanded for further proceedings.  *Id.* at 1178 n.2.

Here the Court finds the record is complete regarding

Plaintiff's impairments.  The Court credited the opinions of

Drs. Wells and Montanaro that Plaintiff should not be exposed to

any cat dander directly or indirectly and was likely to miss

three days of work per month because of his asthma and allergies.

In response to the ALJ's hypothetical, both VEs concluded a

claimant would be precluded from competitive employment under

these circumstances.

Thus, the Court concludes the ALJ would be required to find

Plaintiff disabled on remand, and, therefore, further proceedings

would not be useful.

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the

Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this 28th day of May, 2008.


/s/ Michael Mosman for

_____
ANNA J. BROWN
United States District Judge